**TEXAS PHARMACEUTICAL ASS'N v. DOOLEY et al.**

No. 8209.

Court of Civil Appeals of Texas. Austin.

Jan. 15, 1936.

Rehearing Denied Feb. 5, 1936.

BAUGH, Justice.

Appellant is a private corporation, "organized and operated for the promotion

and advancement of pharmaceutical science and art." Whether with or without capital stock is not shown. Its membership is composed of the registered pharmacists of Texas. It applied for a mandamus to compel appellees, constituting the Texas State Board of Pharmacy, to turn over to it $9,553, in compliance with the provisions of section 14, chap. 107, Acts 41st Leg., 1929 (see Vernon's Ann.Civ.St.art. 4542a, § 14). The trial court sustained a general demurrer to the petition, and upon refusal of appellant to amend, rendered judgment for appellees.

Section 14 of the act above cited provides: "Sec. 14. Every registered pharmacist who desires to continue the practice of pharmacy in this State shall annually, on or before the second day of January of each year, pay to the Secretary of the Board of Pharmacy a renewal fee of three dollars ($3.00). If any person fails or neglects to procure his renewal registration before March first of each year his name shall be erased from the register of licensed pharmacists and such person, in order to regain registration, shall be required to pay one annual renewal fee in addition to the sum of all fees such person may be in arrears. Provided, also, that the Board shall each year turn over to the State Pharmaceutical Association for the advancement of science and art of pharmacy, out of the annual fees collected by it, the sum of two dollars ($2.00) for each pharmacist actively engaged and one dollar ($1.00) for each pharmacist inactively engaged in pharmacy in this State. Provided further that a pharmacist not actively engaged in the practice of pharmacy in this State shall be issued a renewal certificate upon the payment of a fee of two dollars ($2.00) annually or in lieu of such annual fee, said inactive pharmacist, after passing the age of 45 years at his option shall be issued a lifetime certificate upon the payment of fifteen dollars ($15.00)."

The funds sued for were those collected by the State Board of Pharmacy under this act, and remaining in their hands. after payment of all of the expenses of said board. In findings of fact and conclusions of law the trial court shows to have based its refusal to grant the mandamus on the ground that such fees so collected by the board constituted public funds, and that section 14, above quoted, directing the board to turn a part of same

over to appellant, a private corporation, was void as violative of section 51, art. 3 of the State Constitution, which provides: "The Legislature shall have no power to make any grant or authorize the making of any grant of public money to any individual, association of individuals, municipal or other corporations whatsoever, provided, however, the Legislature may grant aid to indigent or disabled Confederate soldiers and sailors, * * * and provided further that the provisions of this section shall not be construed so as to prevent the grant of aid in cases of public calamity."

The portions of said section omitted from the above relate to certain defined exceptions not pertinent to our inquiry here.

The question presented, therefore, is, whether the fees collected by the State Board of Pharmacy are "public moneys" within the purview of the Constitution; and, if so, whether the legislative direction that the Board of Pharmacy turn over to the appellant the annual fees therein levied against pharmacists as a prerequisite to their right to practice their profession, is a grant of such funds to a governmental agency for a governmental purpose. See Bexar County v. Linden, 110 Tex. 339, 344, 220 S.W. 761; City of Aransas Pass v. Keeling, 112 Tex. 339, 247 S.W. 818; Road Dist., etc., v. Allred, 123 Tex. 77, 68 S.W.(2d) 164.

It is manifest, we think, that the chief purpose of the Legislature in passing the act in question was the proper regulation of the practice of pharmacy in the state in the interest of public health and public safety. The fees or dues prescribed by the act are designated in section 9 thereof (Vernon's Ann.Civ.St.art. 4542a, § 9) as a license. If a license only, the power to levy it is referable to the police power of the state and not to its taxing power. If its purpose be, in addition to regulation of the occupation or profession of pharmacy, to raise revenue, then it becomes a tax, and the funds raised thereby should be treated as public moneys. As to licenses, the general rule seem to be, except as to certain occupations which are injurious to the public, that only such fees or dues are authorized to be levied as may be reasonably necessary to regulate the occupation affected and to enforce the law controlling it. Brown v. City of Galveston, 97 Tex. 1, 75 S.W. 488; 27 Tex.Jur. 893; 37 C.

J. 171, 191, and authorities there cited. In the instant case the fee was not fixed by the Board of Pharmacy, but by the law itself. As stated in 37 C.J. 191: "If it is manifest that the amount imposed is substantially in excess of, and out of proportion to, the expenses involved, it generally will be regarded as a revenue measure, and be held unreasonable and void as a regulation under the police power, particularly where the act or ordinance makes no provision for inspection or regulation of the business, and expressly provides for the use of the funds for other purposes."

Appellant alleged in its petition that the Board of Pharmacy collected in the year 1933 total fees of $14,942; and that after payment of all expenses authorized to be incurred by such board under said act, there still remained in its hands sufficient funds to pay appellant the $9,553 claimed to be due it under section 14 of said act. Not only does section 14 of the act fix such fee or license to be charged and collected from all pharmacists, but it directs that the major portion thereof be paid over to a private corporation, not under the control of the Board of Pharmacy, nor regulated by the act itself, nor in any manner charged with carrying out any of the provisions of the law here under consideration.

Appellant cites numerous cases from other jurisdictions in support of its contention, particularly from the state of New York (Fox v. Mohawk & Hudson River Humane Society, 165 N.Y. 517, 59 N.E. 353, 51 L.R.A. 681, 80 Am.St.Rep. 767, and People v. Delaney, 73 Misc. 5, 130 N.Y.S. 833), wherein a license fee was levied upon the owners of dogs, the funds derived therefrom to be turned over to the American Society for the Prevention of Cruelty to Animals; and In re Gibson, from New Mexico, 35 N.M. 550, 4 P.(2d) 643 wherein a license fee, in the form of annual dues, was levied against practicing attorneys, the moneys derived therefrom to be deposited in a special fund in the state treasury, known as the State Bar Fund, and appropriated to the use of the board of commissioners of the state bar. The Constitutions of each of these states contain inhibitions against appropriating public moneys to private individuals or private corporations, analogous to the constitution of Texas. In these cases, however, the society named in the New York

statute was itself constituted the governmental agency of the state, to enforce the law which levied the license fee; and in New Mexico the state bar commissioners were designated in the act as the agency of the state to carry out the provisions of the law, supervise bar examinations, conduct of attorneys, etc., their actions being subject to review by the Supreme Court of the state. Clearly these cases are distinguishable from the case at bar. Here appellant is in no sense an agency of the state, nor vested with any authority or any responsibility by the law in question.

If the fees so collected be treated merely as license fees, levied and collected under the police power of the state, and not as taxes, the appropriation of the major portion of same to a private corporation in nowise charged with the enforcement of the act would be clearly void. Appellant is not in any wise shown to be subject to any control of the State Board of Pharmacy, whose members were public officers of the state, required to take the constitutional oath of office, empowered to administer oaths, whose records required to be kept are made prima facie evidence in any judicial proceeding in this state, and designated in the act as the agency of the state for the enforcement of the laws pertaining to the practice of pharmacy. In so far as the fees appropriated to it are reasonably necessary to enforce such regulation under the police power, the act is valid and sustainable. But in so far as the act undertakes to appropriate such fees to appellant, a private corporation, and not a state agency, it is void even if considered as a police regulation and not as a tax measure.

On the other hand, if these fees provided for in section 14 above quoted and appropriated to appellant be considered as not reasonably necessary for the Board of Pharmacy to discharge its duties under the law and to enforce the same, but as levied for purposes of revenue, then clearly we think they become public funds or public moneys, whether deposited in the state treasury or not, and the attempted grant thereof to appellant private corporation is in clear violation of section 51, art. 3 of the Constitution. In either event, appellant had no cause of action to recover them, and the mandamus sought was properly refused by the trial court. Its judgment is therefore affirmed.